

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

SUNBUM5 ENTERPRISES,

    Debtor.
_____/

CARLA MUSSELMAN, TRUSTEE,

    Plaintiff,

v.

MOLLY BEARD, *et al.*,

    Defendants.
_____/

Case No. 6:09-bk-14839-ABB
Chapter 7

Adv. Pro. No. 6:10-ap-00126-ABB

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Second Amended Complaint (Doc. No. 18) filed by the Trustee/Plaintiff Carla P. Musselman against the Defendants Molly Beard, Bradley Beard, Nicklaus Beard, and MBN, LLC, seeking various relief, and the Counterclaim by Bradley Beard and Nicklaus Beard for violation of the discharge injunctions pursuant to 11 U.S.C. Section 524. The final evidentiary hearing was held on January 20 and January 27, 2011 at which the Trustee, the Defendants, and their respective counsel appeared.[1] The parties submitted post-hearing briefs pursuant to the Court's directive.

---

[1] This adversary proceeding was tried simultaneously with the adversary proceeding *Larry Gregory v. Rickey Beard*, AP No. 6:09-ap-00028-ABB, in which the Court entered a Memorandum Opinion and Judgment on March 29, 2011.

Judgment is due to be entered in favor of the Trustee on Count I against Defendant MBN, LLC pursuant to 11 U.S.C. Sections 544 and 550 and Florida Statute 726.105(1)(a); in favor of Defendant MBN, LLC and against the Trustee on Count III; and in favor of Defendant Molly Beard and against the Trustee on Count IV for the reasons set forth herein.

Count II of the Second Amended Complaint seeks to recover from Defendants Bradley Beard and Nicklaus Beard and Count IV seeks to recover from Bradley Beard. These Defendants filed Chapter 7 bankruptcy on December 26, 2008 and November 5, 2009. This action is stayed as to them. 11 U.S.C. § 362.

The Counterclaim by Defendants Bradley and Nicklaus Beard against Trustee Musselman for violation of the discharge injunctions pursuant to 11 U.S.C. Section 524. Judgment is due to be entered for Bradley and Nicklaus Beard on the Counterclaim.

The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *The Sunbum Lawn Care Business*

Rickey Beard is the husband of Molly Beard and the father of Bradley and Nicklaus Beard. Larry and Rita Gregory were friends of the Beards. The Gregorys sold their family-owned lawn care business to Sunbum5 Enterprises, LLC ("Sunbum"), a Florida limited liability company of which Rickey Beard was the sole member, in December 2004. The purchase price was $800,000.00. Sunbum executed promissory

notes in favor of the Gregorys as part of the purchase. Rickey Beard personally guaranteed those loans.

Rickey Beard operated the Sunbum lawn care business as Sunset Lawncare. Rickey and his sons worked full time in the business; Molly Beard had little involvement. The business was not profitable over time. Sunbum's liabilities exceeded its assets as of early 2007, and it defaulted on its payment obligations to the Gregorys shortly thereafter.

The Gregorys and Beards became involved in litigation in the Florida State Courts, with each party alleging breach by the other. The Beards abandoned the litigation due to lack of funding. The Gregorys filed a motion for summary judgment against Rickey Beard and Sunbum on October 24, 2008. The litigation was stayed as to Rickey Beard pursuant to 11 U.S.C. Section 362(a) when he filed an individual Chapter 7 bankruptcy case on November 26, 2008; it proceeded against Sunbum. Summary Judgment was entered by the State Court on December 17, 2008 in favor of the Gregorys finding: (i) Sunbum is in default of the purchase agreement and promissory notes; and (ii) Sunbum is indebted to the Gregorys in the amounts of $423,322.50 and $253,000.00 (in the aggregate, $676, 322.50) pursuant to the promissory notes.

### *The Asset Transfer to MBN*

Sunbum ceased doing business in October 2008 and transferred assets to MBN, LLC ("MBN") on October 31, 2008, a week after the Gregorys' summary judgment motion was filed. Some vehicles used by Sunbum were repossessed; other Sunbum property, determined by Rickey Beard to be of no value, was abandoned. Rickey filed a voluntary dissolution of Sunbum with the Florida Department of State, Division of Corporations on December 1, 2008.

3

MBN is a Florida limited liability company formed on October 31, 2008. Molly is MBN's sole member. MBN received approximately $66,000.00 worth of hard assets pursuant to an Asset Purchase Agreement executed by Rickey on behalf of Sunbum and by Molly on behalf of MBN; it assumed approximately $91,000.00 of Sunbum's liabilities. No value was assigned to the customer list Sunbum transferred to MBN. No cash was paid by MBN to Sunbum.

Rickey falsely testified at his Section 341 hearing Sunbum had not transferred any assets to MBN.

### *The MBN Lawn Care Business*

MBN operated a lawn care company using the name Sunset of Central Florida. MBN used Sunbum's logo, facilities, and telephone numbers and serviced former Sunbum customers, including customers who had prepaid Sunbum for their lawn care. MBN provided lawn care services to some new customers; it purchased three vehicles and other equipment necessary for its business from sources other than Sunbum.

Molly, Nicklaus, and Bradley were listed on MBN's corporate documents as managers. Molly had minimal involvement in the company's operation, was not employed by MBN and received no salary. Her name was used in the formation of the company because she had good credit and the prospect the company might receive benefits of minority ownership.

Nicklaus and Bradley were employed by MBN and operated the lawn care business; they received salaries and used company cars during their employment. Rickey was briefly involved in MBN's operations, but he received no compensation from MBN. He was reemployed with Massey Services, Inc. where he continues to be employed. The

evidence did not establish any Beard received a benefit from the operation of MBN, other than the salaries and use of company cars by Nicklaus and Bradley.

MBN liquidated its assets during 2009. Bradley and Nicklaus Beard became employed by Massey. Some company equipment was sold on Craig's List, and some equipment was repossessed. The Trustee contends other valuable MBN assets, including the customer list, were sold but presented no evidence.

Bradley Beard testified the decision was made to liquidate MBN rather than turning the assets of the entity over to Trustee Musselman because the Beards did not want the Gregorys to receive any money. Molly Beard testified the Gregorys got all the money they deserved by virtue of their violation of a non-compete agreement with Sunbum.

### *The Sunbum Bankruptcy*

Sunbum filed this Chapter 7 bankruptcy case on October 1, 2009. The Gregorys hold an allowable unsecured claim against Sunbum pursuant to the State Court judgment in the amount of $676,322.50.

### *The Adversary Proceeding*

Trustee Musselman instituted this adversary proceeding in April 2010 against Molly, Bradley, Nicklaus, and MBN seeking, in part, recovery of the assets transferred in 2008 from Sunbum to MBN. The Trustee did not know Bradley and Nicklaus Beard had filed individual Chapter 7 bankruptcies at the time she initiated this proceeding. She was not listed as a creditor on either Bradley's or Nicklaus's bankruptcy schedules. The Trustee learned of these Defendants' bankruptcies during the course of this litigation and continued to prosecute the case against them, as evidenced by the proposed Findings of

Fact and Conclusions of Law and Judgment she submitted to the Court post-trial. Those pleadings seek joint and several judgment against all Defendants, including Bradley and Nicklaus Beard.

*Count I*

Count I seeks to set aside the transfer of assets from Sunbum to MBN pursuant to Florida Statutes Chapter 726. The asset transfer from Sunbum to MBN was fraudulent pursuant to Florida Statute 726.105(1)(a). It was made by Rickey Beard with actual intent to defraud Sunbum's creditors. Rickey, the sole owner of Sunbum, knew Sunbum had breached its payment obligations to the Gregorys and would be held liable for nonpayment of the promissory notes; and he was personally liable to the Gregorys pursuant to the guarantees he had signed for Sunbum's loans. He transferred everything of value from Sunbum to MBN, a new entity created by his wife and sons, one week after the Gregorys filed their motion for summary judgment and declared personal bankruptcy.

Rickey attempted to conceal the Sunbum asset transfer to MBN when he testified under oath at the Section 341 hearing in his personal bankruptcy case.

Rickey Beard transferred all the value of Sunbum to MBN with the specific intent to hinder, delay, or defraud Sunbum's creditors, chief among them the Gregorys. Judgment for the Trustee is due to be entered against MBN for the value of the assets transferred from Sunbum to MBN.

The Trustee established Sunbum transferred $66,000.00 worth of hard assets to MBN. The Trustee did not establish the value of any other asset, including the customer list, transferred to MBN.

*Count II*

Count II alleges Bradley Beard and Nicklaus Beard breached fiduciary duties to creditors of Sunbum by authorizing and accepting the transfer of assets from Sunbum to MBN. These Defendants filed Chapter 7 bankruptcy; this case is stayed in all respects as to them. 11 U.S.C. § 362. The Trustee continues to seek judgment against them.

*Count III*

Count III seeks to impose liability on MBN as a successor to Sunbum and seeks a finding all assets of MBN are property of the Sunbum estate. Successor liability is unwarranted. The transfer from Sunbum to MBN was fraudulent, but MBN had other assets in addition to those that were transferred from Sunbum. MBN maintained a separate corporate existence with a legitimate business purpose and operated under different ownership and management. Rickey Beard was the sole owner of Sunbum. He transferred Sunbum's assets to MBN, a company owned by Molly Beard and managed by Bradley and Nicklaus Beard. The Trustee did not establish Rickey Beard continued to own, manage, or direct MBN after the Sunbum transfer of assets. Judgment is due MBN on Count III.

*Count IV*

Count IV, the final count in the Second Amended Complaint, seeks individual recovery against Molly Beard and Bradley Beard pursuant to an alter ego theory. This action is stayed as to Bradley Beard for the reason stated above.

Piercing the corporate veil to reach the personal assets of Molly Beard is not justified under the facts of this case. The test for corporate veil piercing requires a plaintiff to establish both: (1) the corporation was a mere instrument or alter ego of the

defendant and (2) the defendant engaged in improper conduct in forming or using the corporation.

Molly Beard engaged in improper conduct in forming or using MBN. The transfer from Sunbum to MBN was made by Rickey Beard for an improper purpose (avoiding Sunbum's creditors); and Molly Beard knew that purpose when she formed MBN and received the transfer of Sunbum assets. MBN was created with assets its owner knew should have been accessible to Sunbum's creditors.

But the Trustee did not establish the first element of the veil-piercing test: that MBN was a mere instrumentality or alter ego of Molly Beard. Molly did not dominate or control the business; she had very little involvement with it. Nicklaus and Bradley made MBN's business decisions. Molly did not use MBN as her pawn or disregard its corporate existence. There was no evidence she derived any personal financial benefit (improper or otherwise) from her ownership of MBN. MBN was not a mere instrumentality or alter ego of Molly Beard.

Judgment is due for Molly Beard on Count IV.

*Counterclaim*

Judgment is due Defendants Bradley and Nicklaus Beard on their Counterclaim against the Trustee. The Trustee violated the discharge injunction in 11 U.S.C. Section 524 by pursuing claims against these Defendants on claims that arose prior to their Chapter 7 bankruptcy filings. The Trustee continues to pursue judgment against Bradley and Nicklaus Beard after being informed of their bankruptcies. The proposed Findings of Fact and Conclusions of Law and Judgment she submitted post-trial seek joint and several judgment against all Defendants, including Bradley and Nicklaus Beard.

Defendants Bradley and Nicklaus Beard suffered no significant damages as a result of the Trustee's violation of the discharge injunction however. Their defense was provided by counsel to MBN and Molly Beard. The evidence and argument Bradley and Nicklaus presented at the evidentiary hearing were relevant to the Trustee's claims against the other Defendants and the other Defendants' defenses. The Court was aware of Bradley's and Nicklaus's bankruptcies, and they were never in jeopardy of being subjected to judgment on the Trustee's claims.

## CONCLUSIONS OF LAW

### *Count I: Avoidance of Fraudulent Transfer to MBN*

The Trustee is authorized by 11 U.S.C. Section 544(b) to avoid any transfer by the debtor that is voidable under federal or state law by a creditor holding an unsecured claim allowable pursuant to 11 U.S.C. Section 502. The Gregorys and several other creditors hold allowable unsecured claims against Sunbum. The Trustee is authorized to avoid the transfer from Sunbum to MBN to the extent the transfer is avoidable by the creditors under any applicable law; the Trustee may recover from an initial transferee of an avoidable transfer pursuant to 11 U.S.C. Section 550.

A fraudulent transfer is voidable by a creditor pursuant to Florida's Uniform Fraudulent Transfers Act (FUFTA) up to the amount of the transfer or the amount necessary to satisfy the creditor's claim, whichever is less. F.S.A. §§ 726.108, 726.109(2). FUFTA Section 726.105 states, in relevant part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation

> was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor;

F.S.A. § 726.105(1)(a).[2]

The asset transfer from Sunbum to MBN was fraudulent pursuant to Florida Statute 726.105(1)(a). The circumstances of the transfer establish it was made by Rickey Beard with actual intent to defraud the creditors of Sunbum, chief among them the Gregorys. The timing of the transfer, just a week after the Gregorys filed their motion for summary judgment, is highly probative of Rickey's intent. Rickey was the sole owner of

---

[2] Count I does not specify a section within Chapter 726 of the Florida Statutes on which the Trustee relies. The Trustee's trial presentation and post-trial submissions indicate the Trustee relies on Fla. Stat. 726.105(1)(a).

> In determining actual intent under paragraph (1)(a), consideration may be given, among other factors, to whether:
>
>> (a) The transfer or obligation was to an insider.
>> (b) The debtor retained possession or control of the property transferred after the transfer.
>> (c) The transfer or obligation was disclosed or concealed.
>> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>> (e) The transfer was of substantially all the debtor's assets.
>> (f) The debtor absconded.
>> (g) The debtor removed or concealed assets.
>> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
>> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
>> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

F.S.A. § 726.105(2).

Sunbum and knew Sunbum had breached its payment obligations to the Gregorys. He knew Sunbum would be held liable for nonpayment of the promissory notes and he was personally liable to the Gregorys for Sunbum's loans. He transferred all value out of Sunbum to MBN, a new entity created by his wife, then declared personal bankruptcy.

Rickey did not require MBN to pay Sunbum any cash in exchange for the transfer of $66,000.00 of hard assets and the unvalued customer list. MBN assumed approximately $91,000.00 of Sunbum's liabilities. This was the only consideration for the transfer of a business valued at $800,000 just four years earlier when purchased from the Gregorys. Rickey attempted to conceal the Sunbum asset transfer to MBN when he testified falsely at his Section 341 hearing.

Rickey Beard transferred all value from Sunbum to MBN with the specific intent to hinder, delay, or defraud Sunbum's creditors. The Trustee established Sunbum transferred $66,000.00 worth of hard assets to MBN. The Trustee did not establish the value of any other asset, including the customer list, transferred to MBN. Judgment for the Trustee is due to be entered against MBN for $66,000.00, the value of the assets transferred from Sunbum to MBN as established by the Trustee.

### *Count II: Breach of fiduciary duties by Bradley Beard and Nicklaus Beard*

Defendants Bradley Beard and Nicklaus Beard filed Chapter 7 bankruptcy on December 26, 2008 and November 5, 2009, respectively. This case is stayed in all respects as to them. 11 U.S.C. § 362.

### *Count III: Successor Liability*

The Trustee seeks to impose liability on MBN as a successor to Sunbum. The Trustee seeks a finding all assets of MBN are property of the Sunbum estate and all

claims filed against Sunbum in the bankruptcy may be collected from MBN. The Trustee asserts MBN was a mere continuation of Sunbum's business.

> The concept of continuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name. The "purchasing corporation is merely a 'new hat' for the seller, with the same or similar entity or ownership." <u>The key element of a continuation is a common identity of the officers, directors and stockholders in the selling and purchasing corporation</u>. The change is in form, but not in substance.

Munim v. Azar, 648 So.2d 145, 154 (Fla. 4 DCA 1994) (quoting Bud Antle, Inc. v. Eastern Foods, Inc., 758 F.2d 1451, 1458 (11th Cir.) (en banc), reh'g denied, 765 F.2d 154 (1985)) (emphasis added).

The Trustee did not establish MBN was a mere continuation of Sunbum's business. MBN utilized the equipment it received from Sunbum but procured additional equipment, including three vehicles. MBN provided lawn care to former Sunbum customers and others.

The "key element" of a corporate continuation is absent. MBN and Sunbum did not have any officers, directors, or stockholders in common. Rickey Beard was the sole member of Sunbum. Rickey Beard was not a member of MBN. The Trustee did not establish Rickey Beard continued to own, manage, or direct MBN after the Sunbum transfer of assets. Molly Beard was the sole member of MBN but did not have significant involvement in the business. Bradley and Nicklaus managed MBN. Judgment is due to be entered for MBN on the Trustee's Count III seeking to impose successor liability on MBN.

### *Count IV: Alter Ego Liability*

The Trustee seeks to recover individually against Molly Beard and Bradley Beard on the theory they were alter egos of MBN. This action is stayed as to Bradley Beard pursuant to 11 U.S.C. Section 362.

> The corporate veil may be pierced if the plaintiff can prove "both that the corporation is a 'mere instrumentality' or alter ego of the defendant, <u>and</u> that the defendant engaged in 'improper conduct' in the formation or use of the corporation."

Merkin v. PCA Health Plans of Florida, Inc., 855 So.2d 137 (Fla. 3d DCA 2003) (quoting Bellairs v. Mohrmann, 716 So.2d 320, 323 (Fla. 2d DCA 1998)(citation omitted))(emphasis added); see also Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1120-21 (Fla.1984). The Trustee must establish both: (1) MBN was a mere instrument or alter ego of Molly Beard and (2) Molly Beard engaged in improper conduct in forming or using MBN.

Piercing the corporate veil to reach the personal assets of Molly Beard is not justified because the Trustee did not establish both elements of the veil-piercing test. The Trustee established the second element: that Molly Beard engaged in improper conduct in forming or using MBN. The transfer from Sunbum to MBN was made by Rickey Beard for an improper purpose (avoiding Sunbum's creditors); and Molly Beard knew that purpose when she formed MBN and received the transfer of Sunbum assets. MBN was created with assets its owner knew should have been accessible to Sunbum's creditors.

The Trustee did not establish the first element of the veil-piercing test: that MBN was a mere instrumentality or alter ego of Molly Beard. Molly did not dominate or control the business; she had little involvement. Nicklaus and Bradley made MBN's

business decisions. Molly did not use MBN as her pawn or disregard its corporate existence. There was no evidence she derived any personal financial benefit (improper or otherwise) from her ownership of MBN. MBN was not a mere instrumentality or alter ego of Molly Beard.

Judgment is due for Molly Beard and against Trustee Musselman on Count IV.

### *Defendants' Counterclaim*

Judgment is due Defendants Bradley and Nicklaus Beard on their Counterclaim against the Trustee, but they are not due any monetary damages award. The Trustee violated the discharge injunction pursuant to 11 U.S.C. Section 524 by pursuing claims that arose prior to these Defendants' bankruptcy filings. The Trustee did not know Bradley and Nicklaus Beard had filed individual Chapter 7 bankruptcies at the time she initiated this proceeding; she was not listed as a creditor on either Bradley's or Nicklaus's bankruptcy schedules.

The Trustee learned of these Defendants' bankruptcies during the course of this litigation and continued to prosecute the case against them, as evidenced by the proposed Findings of Fact and Conclusions of Law and Judgment she submitted to the Court post-trial seeking joint and several judgment against all Defendants, including Bradley and Nicklaus Beard.

Defendants Bradley and Nicklaus Beard suffered no significant damages as a result of the Trustee's violation of the discharge injunction. Their defense was provided by counsel to MBN and Molly Beard. The evidence and argument Bradley and Nicklaus presented at the evidentiary hearing were relevant to the Trustee's claims against the other Defendants and the other Defendants' defenses. The Court was aware of Bradley's

and Nicklaus's bankruptcies, and they were never in jeopardy of being subjected to judgment on the Trustee's claims.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that this action is stayed as to Defendants Bradley Beard and Nicklaus Beard; and it is further

**ORDERED, ADJUDGED and DECREED** that the relief sought in Count I of the Plaintiff's Second Amended Complaint is hereby **GRANTED** pursuant to 11 U.S.C. Sections 544 and 550 and Florida Statute 726.105(1)(a) and **JUDGMENT** is hereby entered in favor of the Trustee/Plaintiff Carla P. Musselman and against the Defendant MBN, LLC for $66,000, the established value of the assets transferred from Sunbum to MBN; and it is further

**ORDERED, ADJUDGED and DECREED** that all other relief sought by Plaintiff in her Second Amended Complaint is hereby **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that **JUDGMENT** is hereby entered in favor of Defendants/Counter-Claimants Bradley Beard and Nicklaus Beard and against Trustee Carla P. Musselman pursuant to 11 U.S.C. Section 524; and it is further

**ORDERED, ADJUDGED and DECREED** that Defendants/Counter-Claimants Bradley Beard and Nicklaus Beard shall take no monetary award pursuant to 11 U.S.C. Section 524.

A separate judgment consistent with these findings and conclusions shall be entered contemporaneously.

Dated this 7th day of July, 2011.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge